**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| SIDDIQ A. ALEEM-X, : | |
| a/k/a Terrance Watson, : | |
| : | Civil Action No. 10-038 (RBK-KW) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| SHANE WHITE, et al., : | |
| : | |
| Defendants. : | |

**APPEARANCES:**

>   Plaintiff pro se
>   Siddiq A. Aleem-x
>   Plummer Community Correction Center
>   Wilmington, Delaware 19805

**KUGLER**, District Judge

Plaintiff Siddiq A. Aleem-X ("Plaintiff"), an inmate at the Plummer Community Correction Center ("PCCC"), Wilmington, Delaware, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.[1] At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.  BACKGROUND

---

[1] The PCCC is a multi-faceted facility that manages and supervises offenders who participate in traditional work release. http://doc.delaware.gov/BOCC/BOCC_CCC_plummer.shtml.

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

The Complaint contains eight counts. Counts 1, 3, 4, and 6 are raised against Defendant Carmen Harmon ("Harmon") a counselor at PCCC. On December 3, 2009, Harmon told Plaintiff that his "job was being pulled" without explanation. (D.I. 2, Count 1.) That day, Harmon had contacted Plaintiff's supervisor at AstraZeneca, and told the supervisor that Plaintiff had another job, when he did not. When challenged by Plaintiff about the "lie" Harmon replied, "they let you go." Harmon refused to contact AstraZeneca to "straighten things out." (Id. at Count 3.)

On December 4, 2009, Plaintiff was scheduled to work at Kohl's, his other part-time job, but when he presented at the duty office his schedule was missing from the scheduling book. Harmon, who is responsible for the scheduling book, told him that there was no schedule, but according to Plaintiff earlier in the week there was a schedule in the book that allowed him to go to work. On the same day, Harmon lied to Plaintiff's supervisor and indicated that Plaintiff was not scheduled to work, but the supervisor informed Harmon that Plaintiff was scheduled. Plaintiff states that Harmon's actions were in retaliation for

his grieving the misconduct, unprofessionalism, and incompetence of the prison staff.[2] (Id. at Count 6.)

On December 6, 2009, Harmon issued Plaintiff a program violation for "unaccountable" when, according to Plaintiff, at no time was he unaccountable. The unaccountable charge occurred on December 1, 2009, during a time Plaintiff was working. At the hearing before the Multi-Disciplinary Team ("MDT"), Plaintiff discovered there were additional charges. (Id. at Count 4.)

Count 5 is raised against Defendants Shane White ("White"), Elizabeth Hopkins ("Hopkins"), and Tommy Steel ("Steel"). White and Hopkins are counselors at PCCC and Steel is a Sergeant. Apparently these Defendants were members of the MDT. Plaintiff sought the testimony of his AstraZeneca job manager, but was told that "it would not count" and was not allowed to call the witness. He also asked to present documentary evidence, but his request was denied. (Id. at Count 5.)

Count 7 is raised against Defendant Danatroy Williams ("Williams"), a Sergeant at PCCC. On December 4, 2009, Williams "verbally assaulted" Plaintiff. (Id. at Count 7.)

Counts 2 and 8 are raised against Defendant Khalid Abdussalaam ("Abdussalaam"), a counselor at PCCC. Plaintiff has

---

[2]Liberally construing the Complaint, as the Court must, Count 6 appears to allege a non-frivolous and cognizable retaliation claim against Harmon.

a "Court/Parole Board Order" to attend drug and mental health counseling.  On December 2 and 4, 2009, Abdussalaam did not allow Plaintiff to attend a treatment program.  Also, on three occasions, he did not allow Plaintiff to attend mental health counseling.  Abdussalaam told Plaintiff this was "due to [his] work schedule.  (Id. at Counts 2, 8.)

Plaintiff seeks reimbursement of lost wages, injunctive relief, and restoration of good time credits.  Plaintiff filed a motion to compel which the Court construes as a motion for injunctive relief.  (D.I. 7.)

## II.  STANDARDS FOR SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).  The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff.  Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008); Erickson v. Pardus, 551 U.S. 89, 93 (2007).  Because Plaintiff proceeds pro se, his pleading is liberally construed and his

4

Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. Neitzke, 490 at 327-28; Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989); see, e.g., Deutsch v. United States, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint unless amendment would be

5

inequitable or futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions.  See Ashcroft v. Iqbal, -U.S.-, 129 S.Ct. 1937 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements."  Id. at 1949.

When determining whether dismissal is appropriate, the Court conducts a two-part analysis.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  First, the factual and legal elements of a claim are separated.  Id.  The Court must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Id. at 210-11.  Second, the Court must determine whether the facts alleged in the Complaint are sufficient to show that Plaintiff has a "plausible claim for relief."[3]  Id. at 211.  In other words, the Complaint must do more than allege Plaintiff's entitlement to relief; rather it must

---

[3]A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  Iqbal,129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id.

6

"show" such an entitlement with its facts.  Id.  "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1949  (quoting Fed. R. Civ. P. 8(a)(2)).

### III.  42 U.S.C. § 1983

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

### IV.  ANALYSIS

A. Employment

Plaintiff seeks the recovery of lost wages from Harmon because he was terminated from part-time position at AstraZeneca. (D.I. 2, Counts 1, 3.)  However, there is no federal constitutional right to placement in a work release program. Winsett v. McGinnes, 617 F.2d 996, 1004 (3d Cir. 1980).  Nor is there an inherent due process right to prison employment or work opportunities.  James v. Quinlan, 866 F.2d 627, 630 (3d Cir. 1989).  Indeed, it well established that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the fourteenth amendment.  Id.; see also Brian v. Werner, 516 F.2d 233, 240 (3d Cir. 1975) (inmates

7

expectation of keeping job is not a property interest entitled to due process protection)

Plaintiff's allegations have no basis in law or fact and, therefore, and the Court will dismiss Counts 1 and 3 as frivolous pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B).

B. Due Process

Counts 4 and 5 attempt to raise due process claims. Plaintiff appears to allege that Harmon filed false charges against him. He further alleges that during the MDT hearing, for he first time, he was advised of additional charges and was not allowed to call witnesses or present documentary evidence. Plaintiff was found guilty, but the Complaint does not indicate if he was disciplined or sanctioned.

It is axiomatic that to be entitled to procedural due process protections as set forth in Wolff v. McDonnell, a prisoner must be deprived of a liberty interest.[4] Wolff v.

---

[4]While prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of a criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment. See Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). A prison disciplinary hearing satisfies the Due Process Clause if the inmate is provided with: (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly

McDonnell, 418 U.S. 539, 557-58 (1974). "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed." Sandin v. Conner, 515 U.S. 472 (1995). Prison disciplinary segregation will implicate a protectable liberty interest only if it dramatically departs, in length of time or otherwise, from basic prison conditions. See, e.g., Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (seven months in disciplinary segregation is insufficient to trigger a due process violation); Griffin v. Vaughn, 112 F.3d 703, 706-08 (3d Cir. 1997) (fifteen months in administrative custody is insufficient to trigger a due process violation).

The allegations do not allow the Court to discern if Plaintiff received a sanction that would necessarily implicate a protectable liberty interest. Therefore, the Court will dismiss Count 5 for failure to state a claim upon which relief may be

---

hazardous to institutional safety or correctional goals." Wolff, 418 at 563-71; Griffin v. Spratt, 969 F.2d 16, 19-20 (3d Cir. 1992). Hence, inmates do not have an absolute constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings. See Wolff at 567-68. Further, a right to appeal disciplinary convictions is not within the narrow set of due process rights delineated in Wolff. See Bruton v. Denny, Civ. No. 06-744-SLR, 2007 WL 1576341, at *3 (D. Del. May 30, 2007); Counterman v. Fauver, Civ. No. 83-4839, 1989 WL 200954 (D.N.J. Nov. 24, 1989); Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983); Greer v. DeRobertis, 568 F. Supp. 1370 (N.D. Ill. 1983).

granted pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B). Plaintiff will be given leave to amend Count 5.

As to Plaintiff's claim that Harmon filed a false program violation, this, without more, does not violate Plaintiff's constitutional rights under the Due Process Clause. See Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002). The claim against Harmon is frivolous, and the Court will dismiss Count 4 pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

C. Verbal Assault

Plaintiff alleges that he was verbally assaulted by Williams. Verbal abuse of a prisoner, even of the lewd variety, is not actionable under 42 U.S.C. § 1983. Aleem-X v. Westcott 347 F. App'x 731 (3d Cir. 2009) (not published). See Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993); see also McBride v. Deer, 240 F.3d 1287, 1291 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) (verbal harassment does not violate inmate's constitutional rights). Similarly, allegations that prison personnel have used threatening language and gestures are not cognizable claims under § 1983. Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him).

Plaintiff's claims of verbal abuse, assault or harassment, are not cognizable under § 1983. Therefore, the Court will

dismiss Count 7 as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

    D.  Prison Programs/Mental Health Counseling

Plaintiff alleges that, because of his work schedule, Abdussalaam did not allow Plaintiff to attend a drug treatment program on two occasions and mental health counseling on three occasions.  (D.I. 2, Counts 2, 8.)  Prisoners, however, have no constitutional right to drug treatment or other rehabilitation.  Groppi v. Bosco, 208 F. App'x 113, 115 (3d Cir. 2006) (not published); Abdul-Akbar v. Department of Corr., 910 F. Supp. 986, 1002 (D. Del. 1995); see also Norris v. Frame, 585 F.2d 1183 (3d Cir. 1978).  Hence, Plaintiff's claim fails.

To the extent that Plaintiff alleges a medical needs claim by reason of the few times he was not allowed to attend mental counseling sessions, the claim also fails.  The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-105 (1976).  However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.  Estelle v. Gamble, 429 U.S. at 104;  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk

11

of serious harm and fails to take reasonable steps to avoid the harm.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care."  <u>Estelle v. Gamble</u>, 429 U.S. at 104-05.

The allegations fail to rise to the level of a constitutional violation.  There is no indication that Plaintiff was denied total access to mental health counseling.  Rather, on three occasions Plaintiff was not allowed to attend the sessions due to his work schedule.

For the above reasons, the Court will dismiss as frivolous Counts 2 and 8 pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

    E.  Injunctive Relief

Plaintiff seeks injunctive relief:  (1) for sufficient access to the law library; (2) to compel the Warden to allow Plaintiff access to his job, attorney appointment, and mental health appointment; (3) to prevent disciplinary actions and/or decisions against him without prior approval by the Commission of the Delaware Department of Correction; (4) to stop retaliation by Williams; and (5) to cease the retaliatory intimidation tactics of unnecessary disciplinary actions, ground restrictions, and use of the institutional classification boards.

A preliminary injunction is "an extraordinary remedy that should be granted only if (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." NutraSweet Co. v. Vit-Mar Enterprises, Inc., 176 F.3d 151, 153 (3d Cir. 1999) ("NutraSweet I"). The elements also apply to temporary restraining orders. See NutriSweet Co. v. Vit-Mar Enterprises., Inc., 112 F.3d 689, 693 (3d Cir. 1997) ("NutraSweet II") (a temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." NutraSweet I, 176 F.3d at 153. Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. Rush v. Correctional Med. Services, Inc., 287 F. App'x 142, 144 (3d Cir. 2008) (not published) (citing Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995)).

Plaintiff's motion states that, at the time he filed the motion on February 24, 2010, he had been restricted to the grounds since February 17, 2010, with no explanation. The

13

grounds restriction prevents "access to his job, attorney appointment, and mental health appointment." Exhibits to the motion indicate that Williams issued Plaintiff an "off-limits" violation on January 30, 2010, when Plaintiff did not appear for "Count Time." The MDT met on February 2, 2010, and sanctioned Plaintiff to seven days extra work detail and road crew.

Plaintiff cannot prevail on his motion for injunctive relief to the extent that he seeks to compel the Warden to allow Plaintiff access to his job, attorney appointment, and mental health appointment, to prevent disciplinary actions and/or decisions against him without prior approval by the Commission of the Delaware Department of Correction, to stop retaliation by Williams, to cease the retaliatory intimidation tactics of unnecessary disciplinary actions, ground restrictions, and use of the institutional classification boards.

It is evident that certain restrictions were placed upon Plaintiff as a result of a program violation. Additionally, the ground restriction, which prevents Plaintiff from attending outside events, even were he not provided due process, is not the type of sanction that implicates a liberty interest as set forth in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).

Moreover, where a plaintiff requests an injunction that would require the Court to interfere with the administration of a state prison, "appropriate consideration must be given to

principles of federalism in determining the availability and scope of equitable relief." Rizzo v. Goode, 423 U.S. 362, 379 (1976). Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." Wolff v. McDonnell, 418 U.S. 539, 566 (1974). Hence, prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. Bell v. Wolfish, 441 U.S. 520, 527 (1979). The federal courts are not overseers of the day-to-day management of prisons, and the Court will not interfere in the Department of Correction's determination to sanction, discipline, place restrictions, or make decisions regarding Plaintiff.

Plaintiff also complains that he is not provided adequate law library access. The record reflects that he received a "one-time only" pass on February 16, 2010. Prisoners must be allowed "adequate, effective and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). A violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access. The actual injury requirement is a constitutional prerequisite to suit.

15

Lewis v. Casey, 518 U.S. 343, 351 (1996); Christopher v. Harbury, 536 U.S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"). An actual injury is shown only where a nonfrivolous, arguable claim is lost. Christopher, 536 U.S. at 415.

At this juncture, there is no indication that Plaintiff has suffered an actual injury from his alleged denial of access to the courts. To date, he has been able to adequately proceed with the case. Should problems arise in the future, Plaintiff is given leave to file a renewed motion for access to the law library.

For the above reasons, the Court concludes that Plaintiff has neither demonstrated the likelihood of success on the merits, nor has he demonstrated irreparable harm to justify injunctive relief. Therefore, the Court will deny the motion for injunctive relief. (D.I. 7.)

## V.   CONCLUSION

For the reasons set forth above, Counts 1, 2, 3, 4, 7, and 8 of the Complaint must be dismissed as frivolous and Count 5 must be dismissed without prejudice for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). Plaintiff may proceed with Count 6 against Harmon. Plaintiff will be given leave to amend Count 5

as outlined in the body of this Opinion.  Plaintiff's motion for injunctive relief must be denied.  (D.I. 7.)

An appropriate Order follows.

s/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: May 4, 2010

17

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| SIDDIQ A. ALEEM-X, : | |
| a/k/a Terrance Watson, : | |
| : | Civil Action No. 10-038 (RBK-KW) |
| Plaintiff, : | |
| : | **ORDER** |
| v. : | |
| : | |
| SHANE WHITE, et al., : | |
| : | |
| Defendants. : | |

For the reasons expressed in the Opinion filed herewith,

IT IS on this __4th__ day of May, 2010,

ORDERED that Counts 1, 2, 3, 4, 7, and 8 of the Complaint are DISMISSED as frivolous and Count 5 is DISMISSED without prejudice for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1); and it is further

ORDERED that Plaintiff is given leave to AMEND Count 5 of the Complaint; and it is further

ORDERED that Plaintiff may proceed with Count 6 of the Complaint against Defendant Carmen Harmon; and it is further

ORDERED that if Plaintiff fails to amend Count 5 of the Complaint within THIRTY (30) DAYS from the date of this Order the case will proceed solely on Count 6 of the Complaint against Defendant Harmon; and it is further

ORDERED that the motion for injunctive relief (D.I. 7) is DENIED; and it is finally

ORDERED that the Clerk shall serve copies of this Order and accompanying Opinion upon Plaintiff by regular U.S. mail.

s/Robert B. Kugler
Robert B. Kugler
United States District Judge
